UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | CASE NO. 21-cr-282-3 (TSC) |
| v. | : | |
| | : | |
| ELIAS IRIZARRY, | : | |
| | : | |
| Defendant. | : | |

## STATEMENT OF OFFENSE

Pursuant to Federal Rule of Criminal Procedure 11, the United States of America, by and through its attorney, the United States Attorney for the District of Columbia, and the defendant, ELIAS IRIZARRY, with the concurrence of his attorney, agree and stipulate to the below factual basis for the defendant's guilty plea—that is, if this case were to proceed to trial, the parties stipulate that the United States could prove the below facts beyond a reasonable doubt:

### *The Attack at the U.S. Capitol on January 6, 2021*

1. The U.S. Capitol, which is located at First Street, SE, in Washington, D.C., is secured 24 hours a day by U.S. Capitol Police. Restrictions around the U.S. Capitol include permanent and temporary security barriers and posts manned by U.S. Capitol Police. Only authorized people with appropriate identification are allowed access inside the U.S. Capitol.

2. On January 6, 2021, the exterior plaza of the U.S. Capitol was closed to members of the public.

3. On January 6, 2021, a joint session of the United States Congress convened at the United States Capitol, which is located at First Street, SE, in Washington, D.C. During the joint session, elected members of the United States House of Representatives and the United States Senate were meeting in separate chambers of the United States Capitol to certify the vote count of the Electoral College of the 2020 Presidential Election, which had taken place on November 3,

2020. The joint session began at approximately 1:00 p.m. Shortly thereafter, by approximately 1:30 p.m., the House and Senate adjourned to separate chambers to resolve a particular objection. Vice President Mike Pence was present and presiding, first in the joint session, and then in the Senate chamber.

4. As the proceedings continued in both the House and the Senate, and with Vice President Pence present and presiding over the Senate, a large crowd gathered outside the U.S. Capitol. As noted above, temporary and permanent barricades were in place around the exterior of the U.S. Capitol building, and U.S. Capitol Police were present and attempting to keep the crowd away from the Capitol building and the proceedings underway inside.

5. At approximately 2:00 p.m., certain individuals in the crowd forced their way through, up, and over the barricades, and officers of the U.S. Capitol Police, and the crowd advanced to the exterior façade of the building. The crowd was not lawfully authorized to enter or remain in the building and, prior to entering the building, no members of the crowd submitted to security screenings or weapons checks by U.S. Capitol Police Officers or other authorized security officials.

6. At such time, the certification proceedings were still underway and the exterior doors and windows of the U.S. Capitol were locked or otherwise secured. Members of the U.S. Capitol Police attempted to maintain order and keep the crowd from entering the Capitol; however, shortly after 2:00 p.m., individuals in the crowd forced entry into the U.S. Capitol, including by breaking windows and by assaulting members of law enforcement, as others in the crowd encouraged and assisted those acts. The riot resulted in substantial damage to the U.S. Capitol, requiring the expenditure of more than $2.7 million dollars for repairs.

7.      Shortly thereafter, at approximately 2:20 p.m., members of the United States House of Representatives and United States Senate, including the President of the Senate, Vice President Pence, were instructed to—and did—evacuate the chambers. Accordingly, all proceedings of the United States Congress, including the joint session, were effectively suspended until shortly after 8:00 p.m. the same day. In light of the dangerous circumstances caused by the unlawful entry to the U.S. Capitol, including the danger posed by individuals who had entered the U.S. Capitol without any security screening or weapons check, Congressional proceedings could not resume until after every unauthorized occupant had left the U.S. Capitol, and the building had been confirmed secured.  The proceedings resumed at approximately 8:00 p.m. after the building had been secured.  Vice President Pence remained in the United States Capitol from the time he was evacuated from the Senate Chamber until the session resumed.

### *IRIZARRY's Participation in the January 6, 2021, Capitol Riot*

8.      On January 5, 2021, the defendant drove with co-defendants Grayson Sherrill (Sherrill) and Elliot Bishai (Bishai), in Bishai's car, to Washington, D.C. from South Carolina. They stayed at a hotel in Northern Virginia on the night of January 5, 2021.

9.      On January 6, 2021, the defendant, along with Sherrill and Bishai went to the Ellipse to watch former President Donald Trump's speech.  They began walking toward the U.S. Capitol building before the speech ended.

10.     As they approached the west side of the Capitol building, the defendant saw downed metal bicycle barricades and broken fencing around the Capitol building.  Another rioter handed the defendant and Sherrill poles that had been broken off from a metal bicycle barricade. The defendant and Sherrill carried these respective metal poles with them inside the Capitol building.

11. Before entering the Capitol building, on the west side of the Capitol grounds, the defendant observed people climbing scaffolding and scaling walls. He also saw and smelled tear gas and smoke, and lines of police attempting to block the crowd from going further onto the grounds or into the Capitol building.

12. At some point before entering the Capitol building, the defendant and Bishai got separated from Sherrill.

13. At approximately 2:26 pm, the defendant and Bishai entered the Capitol Building through a broken window next to the Senate Wing door. The defendant observed shards of glass on the inside of the Capitol that came from the broken window through which he entered.

14. The defendant and Bishai entered a conference room (Room S145) on the first floor of the Capitol and sat in chairs in the conference room. They then continued to the Crypt, where they took photographs of each other using their cellular telephones. They also took an elevator to the third floor of the Capitol but did not enter any rooms on this floor.

15. The defendant and Bishai continued to the Rotunda, where they reunited with Sherrill. All three co-defendants climbed on statues in the Rotunda while taking photographs of one another using their cellular telephones. The defendant carried his respective above-referenced metal pole throughout the Capitol Building. The defendant also observed Sherrill carrying his respective above-referenced metal pole in the Rotunda.

16. The defendant, Sherrill, and Bishai exited the Capitol Building at approximately 2:53 pm through the East Rotunda doors. The defendant and Bishai were inside the Capitol Building for approximately 27 minutes.

17. After leaving the Capitol building, the defendant and Bishai sat on a police car that was parked on the east side of the Capitol.

18.  That night, the defendant, Sherrill, and Bishai drove back to Fort Mill, South Carolina, dropping off Sherrill in North Carolina, then proceeding to Fort Mill. On the drive home, Sherrill told the defendant and Bishai that he had hit a police officer on the officer's helmet.

19.  The defendant knew at the time he entered and remained on the U.S. Capitol grounds and inside the U.S. Capitol Building that he did not have lawful authority to do so.

20.  The defendant further agrees that he has read or had read to him the allegations against co-defendants Grayson Sherrill and Elliot Bishai in Indictment 21-cr-282-TSC, *United States v. Sherrill, et. al*. The defendant further agrees that he does not have information to dispute or disprove the allegations against co-defendants Grayson Sherrill and Elliot Bishai, and potential unindicted co-conspirators.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By:   /s/
GRACE ALBINSON
NY Bar No. 4592697
Trial Attorney, U.S. Department of Justice
Capitol Riot Detailee
150 M Street, N.E.
Washington, D.C. 20002
(202) 598-3276

## DEFENDANT'S ACKNOWLEDGMENT

I, Elias Irizarry, have read this Statement of the Offense and have discussed it with my attorney. I fully understand this Statement of the Offense. I agree and acknowledge by my signature that this Statement of the Offense is true and accurate. I do this voluntarily and of my own free will. No threats have been made to me nor am I under the influence of anything that could impede my ability to understand this Statement of the Offense fully.

Date: 9/16/2022

Elias Irizarry
Defendant

## ATTORNEY'S ACKNOWLEDGMENT

I have read this Statement of the Offense and have reviewed it with my client, Elias Irizarry, fully. I concur in my client's desire to adopt this Statement of the Offense as true and accurate.

Date: 9/19/22

Eugene Ohm, Esq.
Attorney for Defendant